THE UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **JAMES R. BAIN;** | ) |
| | ) |
| **CLINE RAY BORDEN;** | ) |
| | ) |
| **THOMAS G. BROCK, II;** | ) |
| | ) |
| **BILLY RAY CUNNINGHAM;** | ) |
| | ) |
| **WILLOWDEAN HARRISON**, individually | ) |
| and as representative of the Estate of **ROBERT** | ) |
| **H. HARRISON;** | ) |
| | ) |
| **PATRICIA HOLCOMBE**, Individually and as | ) |
| Representative of the Estate of **JOSEPH** | ) |
| **JAMES HOLCOMBE, SR.;** | ) |
| | ) |
| **WANDA C. MILLER, individually and as** | ) |
| **Representative for the Estate of FRANK T.** | ) |
| **MILLER;** | ) |
| | ) |
| **FRANK E. MORROW;** | ) |
| | ) |
| **EZRA O. SANFORD;** | ) |
| | ) |
| **ROGER SEYMORE;** | ) |
| | ) |
| **LILLIAN H. WILLIAMS**, Individually and as | ) |
| Representative for the Estate of **MANUEL R.** | ) |
| **WILLIAMS, SR.** | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| vs. | ) |
| | ) |
| **ASBESTOS DEFENDANTS:** | ) |
| | ) |
| **A.O. SMITH ELECTRICAL PRODUCTS** | ) |

**CIVIL ACTION**
Case No.

a:07-CV-84-MHT

**JURY DEMAND**

2007 JAN 29 P 4:57

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

EXHIBIT
A

**COMPANY, a division of A.O. SMITH CORPORATION;**

**A.O. SMITH CORPORATION;**

**ALBANY INTERNATIONAL;**

**ALLIS-CHALMERS CORPORATION;**

**AMERICAN STANDARD, INC.;**

**ARVINMERITOR, INC.;**

**ASTEN JOHNSON, INC.**, individually and as successor-in-interest to **ASTEN, INC.,** successor-in-interest by way of name change to **ASTEN GROUP, INC.,** formerly trading as **ASTEN-HILLS MANUFACTURING CO.;**

**BAYER CROPSCIENCE, INC.**, individual and as successor to **AVENTIS CROPSCIENCE USA, INC.** f/k/a **RHONE-POULENCE AG CO.,** f/k/a **AMCHEM, PRODUCTS, INC., BENJAMIN FOSTER CO.;**

**BELL & GOSSETT**, a subsidiary of **ITT INDUSTRIES;**

**BECHTEL CONSTRUCTION COMPANY;**

**BONDEX INTERNATIONAL INC.;**

**BORG WARNER CORPORATION** by its successor in interest, **BORGWARNER MORSE TEC INC.;**

**BP AMERICA,** as successor in interest to

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

AMOCO CHEMICAL COMPANY, )
AMOCO CHEMICALS COMPANY, )
PLASKON ELECTRONIC MINERALS, )
AVISUNCORP., CARBORUNDUM, )
ATLANTIC RICHFIELD )
COMPANY/ARCO METALS, as successor )
in interest to ANACONDA AMERICAN )
BRASS COMPANY, AMERICAN BRASS )
COMPANY, and ANACONDA )
COMPANY; )
 )
BP AMOCO CHEMICAL COMPANY; )
 )
BUFFALO PUMP INC.; )
 )
CLARK-RELIANCE CORPORATION; )
 )
CLEAVER BROOKS, a division of  AQUA )
CHEM; )
 )
CONWED CORPORATION; )
 )
COOPER INDUSTRIES, LLC, f/n/a )
COOPER INDUSTRIES, INC., individually )
and as successor-in-interest to CROUSE- )
HINDS; )
 )
CRANE CO., individually and as successor in )
interest to DEMING PUMP, )
CYCLOTHERM,  HYDRO-AIRE,  LEAR )
ROMEC, RESISTOFLEX, SWARTWOUT )
CO., STOCKHAM VALVE COMPANY, )
WEINMAN PUMP COMPANY, )
CHEMPUMP, and BURKS PUMPS; )
 )
CRANE PUMPS SYSTEMS, individually )
and as successor to all pump companies )
acquired by CRANE; )
 )
CUTLER HAMMER, currently referred to as )

3

EATON ELECTRICAL, INC.;     )
)
EATON CORPORATION;     )
)
EMERSON ELECTRIC CO.;     )
)
EXTECO, INC., f/k/a THERMO     )
ELECTRIC CO., INC.;     )
)
FMC CORPORATION, individually and on     )
behalf of its former CONTRUCTION     )
EQUIPMENT GROUP, and former     )
PEERLESS PUMP DIVISION, COFFIN     )
TURBO PUMPS, and CHICAGO PUMP,     )
business;     )
)
FLAME REFRACTORIES, INC.;     )
)
FOSECO, INC.;     )
)
FOSTER-WHEELER CORPORATION;     )
)
GARLOCK SEALING TECHNOLOGIES     )
L.L.C.;     )
)
GENERAL ELECTRIC CO.;     )
GOODYEAR TIRE AND RUBBER CO.;     )
)
GOULDS PUMPS INC.;     )
)
HARNISCHFEGER CORPORATION;     )
)
HOBART BROTHERS COMPANY;     )
)
HONEYWELL, INC., specifically excluding     )
liability for NARCO, individually and as     )
successor to ALLIED SIGNAL, BENDIX,     )
WHEELABRATOR, RUST     )
ENGINEERING, AND ALLIED     )
CHEMICAL;     )

4

IMO INDUSTRIES, INC., formerly **IMO DE LAVAL**, formerly **TRANSAMERICA DE LAVAL TURBINE**;

**INDUSTRIAL HOLDINGS CORPORATION**, f/k/a **THE CARBORUNDUM COMPANY**;

**INGERSOLL-RAND COMPANY**;

**ITT INDUSTRIES INC.**;

**JOHN CRANE, INC.**, f/k/a **JOHN CRANE PACKING COMPANY**;

**KAISER GYPSUM COMPANY, INC.**;

**KELLY-MOORE PAINT COMPANY, INC.**;

**THE LINCOLN ELECTRIC COMPANY**;

**MAREMONT CORPORATION**;

**METROPOLITAN LIFE INSURANCE COMPANY**;

**NIKKO MATERIALS USA, INC.**, d/b/a **GOULD ELECTRONICS, INC.**, individually and as successor in interest to **GOULDS, INC., IMPERAL CORPORATION, EASTMAN CORPORATION, IMPERIAL EASTMAN CORPORATION, ITE CIRCUIT BREAKER COMPANY**, and **CENTURY ELECTRIC**;

**OGLEBAY NORTON COMPANY**;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

OWENS-ILLINOIS, INC.;                                      )
                                                           )
P&H CRANES;                                                )
                                                           )
PNEUMO ABEX LLC, successor in interest                     )
to ABEX CORPORATION;                                       )
                                                           )
RAPID AMERICAN  CORPORATION;                               )
                                                           )
ROCKWELL AUTOMATION, successor                             )
by merger to ALLEN-BRADLEY CO., LLC;                       )
                                                           )
SQUARE D COMPANY;                                          )
                                                           )
SUNBEAM PRODUCTS                                           )
INCORPORATED, f/k/a SUNBEAM                                )
CORPORATION;                                               )
                                                           )
SURFACE COMBUSTION;                                        )
                                                           )
TH AGRICULTURE & NUTRITION,                                )
LLC;                                                       )
                                                           )
THE MARLEY-WYLAIN COMPANY,                                 )
d/b/a WELL-MCLAIN COMPANY, INC.;                           )
                                                           )
UNION CARBIDE CORPORATION;                                 )
                                                           )
UNIROYAL FIBER AND TEXTILE &                               )
DIVISION OF UNIROYAL, INC.;                                )
                                                           )
VIACOM INC., successor by merger to CBS                    )
CORPORATION f/k/a WESTINGHOUSE                             )
ELECTRIC CORPORATION;                                      )
                                                           )
             Defendants.                                   )
                                                           )

6

## COMPLAINT

Plaintiffs allege and complain against the above-named Defendants, and each demands a jury trial of all issues and causes of actions:

## JURISDICTION

This Court has subject jurisdiction over this case pursuant to 28 U.S.C. § 1332. Plaintiffs are resident citizens of the State of Alabama, Tennessee, and Wyoming, and Defendants are corporations whose principal places of business are in states other than the State of Alabama. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and is within the jurisdiction of the Court.

## STATUTE OF LIMITATIONS

"Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive" *Van Buskirk v Cary Canandian Mines, Ltd.*760 F.2d 481(3rd Cir. Pa., 1985). Therefore, the Alabama Statute of limitations, and other related statutes, apply to this case.

## BACKGROUND FACTS — THE PLAINTIFFS

1. Plaintiff **JAMES R. BAIN**, a resident of Altoona, Alabama, contracted one or more asbestos-related diseases including Pleural. Plaintiff was continually exposed to asbestos-containing products, produced,

manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

During the course of his employment, Plaintiff worked, including but not limited to, as an engineer in the US Army from 1943 – 1947; as a boiler/pipefitter for Gulf State Steel from 1939 – 1947 in Gadsden, Alabama; as a boiler worker from 1947 – 1954 in Gadsden, Alabama; as a millwright/pipefitter for Goodyear Tire & Rubber Company from 1954 – 1985 in Gadsden, Alabama; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with asbestos-related Pleural Disease on or about December 4, 2006.

2. Plaintiff **CLAY RAY BORDEN**, a resident of Leighton, Alabama, contracted one or more asbestos-related diseases including Pleural. Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

During the course of his employment, Plaintiff worked, including but not limited to, as a Laborer for Brocks Candy Company from 1961 – 1965 in Chicago, Illinois; as a quilter for GC Lingerie Company from 1966 – 1969 in Muscle Shoals, Alabama; as a potman aluminum worker at the Reyonalds Plant from 1969 – 1980 in Sheffield, Alabama; as a laborer for Brown Root Champion a paper mill in 1982 in Coutland, Alabama; as a laborer, tore out the inside of building for Wal-Mart in 1983 in Muscle Shoals, Alabama; as a laborer for GUMBK Construction at the Reynolds Plant from 1885 – 1986 in Sheffield, Alabama; as a laborer/deckhand for TVA's Colbert Steam Plant from 1987 – 2002 in Tuscumbia, Alabama; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with asbestos-related Pleural Disease on or about January 8, 2007.

3.      Plaintiff **THOMAS G. BROCK, II**, a resident of Greenfield Tennessee, contracted one or more asbestos-related diseases including Pleural. Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

9

During the course of his employment, Plaintiff worked, including but not limited to, Jeanell Sales from 1965 – 1993 in Sharon, Tennessee; as a machinist Mate in the US Navy on the destroyer USS New DD818, and on the Golden Eagle, USS Arcturus 8F52, and Golden Bear from January 1971 to January 1975; as heavy equipment operator for JVC Construction from 1975 – 1976 in Columbia, Kentucky; as a fork lift operator for Halls Printing Company in 1977 in Dresden, Tennessee; as a laborer for Brooks Welding in 1978 in Dresden, Tennessee; as a tire builder for Goodyear Tires from 1978 – 1980 in Union City, Tennessee; as chief operator officer for Jeanell Sales from 1980 – 1993 in Sharon, Tennessee; as an office worker for Earth Care from 1993 – 1996 in Sharon, Tennessee; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with asbestos-related Pleural Disease on or about October 20, 2006.

4.     Plaintiff **BILLY RAY CUNNINGHAM**, a resident of Pinson, Alabama, contracted one or more asbestos-related diseases including Asbestosis. Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or

placed into the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

During the course of his employment, Plaintiff worked, including but not limited to, as a laborer for Bigelow Green, AP Green, ARC Refractory, and Smith Refractory from 178 – 1980 in Birmingham, Alabama; as an equipment operator for Southern Tree Expert from 1980 – 1984 in Birmingham, Alabama; as a heating and air conditioning technician for Smitherman Plumbing in 1984 in Birmingham, Alabama; as a maintenance technician for Serene Valley Apartments in 1984 in Birmingham, Alabama; as a service technician for Valley Heating & Air Conditioning from 1985 – 1989 in Birmingham, Alabama; as service technician for Harris Air Systems from 1989 – 1996 in Birmingham, Alabama; installed boiler for Jake Marshall Service from 1996 – 2000 in Birmingham, Alabama; as a service technician for Standard Heat and Air from 2001 – 2005 in Birmingham, Alabama; as a service technician for Shook & Fletcher from 2005 to the Present; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with Asbestosis on or about May 24, 2005.

5.    Plaintiff, Willodean Harrison's Decedent **ROBERT W. HARRISON,** a resident of Carbon Hill, Alabama, prior to his death, contracted one or more asbestos-related diseases including Lung Cancer from which he died.  Decedent was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment until his death.

During the course of his employment, Plaintiff's Decedent worked, including but not limited to, as a laborer, he cut coal, and hung asbestos curtains for Secgo/Drummond from 1961 - 1984 in Parrish, Alabama; worked for Chevrolet in Detroit Michigan; for Ford Motor Company from 1953 – 1955 in Dearborn; around furnaces, boilers, turbines and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff's Decedent died of Lung Cancer as a consequence of exposure to asbestos and asbestos-containing materials and products, on or about, October 12, 2005.  This case is brought by his spouse and personal representative, Willodean Harrison, a resident of Carbon Hill, Alabama.

6.    Plaintiff, Patricia Holcombe's Decedent **JOSEPEH JAMES HOLCOMBE, SR.,** a resident of Chickasaw, Alabama, prior to his death,

contracted one or more asbestos-related diseases including Lung Cancer from which he died. Decedent was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment until his death.

During the course of his employment, Plaintiff's Decedent worked, including but not limited to, as a machinist, a filter stripper/soda operator at Courtaulds from 1976 – 2001 in Axis, Alabama; as a meter reader for Prichard Water Works from 2002 – 2003 in Pritchard, Alabama; as a laborer filling oil tanks for Mobile Rosin Oil Company, from 2003 – 2004; as a roofer for Campbell Roofing from in 2004 in Fort Wilson Beach, Florida; and in Saraland, Alabama in 2005; around furnaces, boilers, turbines and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff's Decedent died of Lung Cancer as a consequence of exposure to asbestos and asbestos-containing materials and products, on or about, February 25, 2005. This case is brought by his spouse, Patricia Holcombe, a resident of Chickasaw, Alabama.

7. Plaintiff, Wanda C. Miller's Decedent **FRANK T. MILLER** a resident of Scottsboro, Alabama, prior to his death, contacted one or more

asbestos-related diseases including Lung Cancer from which he died. Decedent was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment until his death.

During the course of his employment, Plaintiff's Decedent worked, including but not limited to, as a machine operator and spreader operator for Warren Brothers Paving from 1957 – 1965 in Nashville, Tennessee; a laborer as a lineman and pot man at Consolidated Aluminum from 1965 – 1970 in New Johnsonville, Tennessee; as a pot room supervisor for Revere Cooper & Brass from 1970 – 1982 in Scottsboro, Alabama; as a security guard for Norandal Aluminum from 1982 – 1985 in Scottsboro, Alabama; as a machine operator, a saw man and a fork lift operator at Norandal Aluminum from 1985 – 1999 in Scottsboro, Alabama; around furnaces, boilers, turbines and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff's Decedent died of Lung Cancer as a consequence of exposure to asbestos and asbestos-containing materials and products, on or about, August 8, 2005. This case is brought by his spouse and Personal Representative, Wanda C. Miller, a resident of Scottsboro, Alabama.

8. Plaintiff **FRANK E. MORROW**, a resident of Cheyenne, Wyoming, contracted one or more asbestos-related diseases including Pleural. Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

During the course of his employment, Plaintiff worked, including but not limited to, as a boilermaker from 1946 – 1950 for the Union Pacific Railroad; in the US Army Infantry from 1950- 1952; as a boilermaker from 1952 – 1953 for the Union Pacific Railroad; as an apprentice electrician for F.W. Fitch Electric from 1952 – 1953 in Cheyenne, Wyoming; as an electrician for Fischbach & Moore from 1959 – 1961 in Cheyenne, Wyoming; as an electrician for Simpson Electric from 1960 – 1961 in Cheyenne, Wyoming; as an electrician for Storey Electric in 1961 in Cheyenne, Wyoming; as journeyman for Fischbach & Moore from 1962 – 1964 in Cheyenne, Wyoming; as a journeyman for Simpson Electric and B & L Electric, in 1964 in Cheyenne, Wyoming; as an electrician for Fischbach & Moore from 1964 – 1965 in Cheyenne, Wyoming; as a journeyman for Interstate Electric from 1965 – 1966 in Cheyenne, Wyoming; as a journeyman for Simpson Electric from 1966 – 1968 in Cheyenne, Wyoming;

as a journeyman for Kennedy Electric from 1968 – 1969 in Cheyenne, Wyoming; as an electrician for Aruba Electric from 69 – 1970 in Cheyenne, Wyoming; as a journeyman for Electric Corporation of American from 1979 – 1980 in Cheyenne, Wyoming; as an electrician for Simpson Electric in 1980 in Cheyenne, Wyoming; as an electrician for PS Cook Company from 1980 – 1981 in Cheyenne, Wyoming; as a journeyman for Dynalectric from 1981 – 1982 in Cheyenne, Wyoming; as a journeyman for Coal Gasification Plant from 1983 – 1984 in Beulah, North Dakota; as an electrician for Simpson Electric Company from 1969 – 1984 in Cheyenne, Wyoming; as a Supervisor for Frontier Refining Company from 1984 – 1990 in Cheyenne, Wyoming; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with Asbestosis on or about March 22, 2006.

9. Plaintiff **EZRA O. SANFORD**, a resident of Parrish, Alabama, contracted one or more asbestos-related diseases including Pleural Disease. Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into

the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

During the course of his employment, Plaintiff worked, including but not limited to, the US Army from 1959 - 1961 in the Baltimore Air Defense Area, Supply Delivery and trained at Fort Jackson, South Carolina, A Battery, 4th Missile Battalion, 1st Artillery, and was discharged at Aberdean Proving Ground, Maryland; as a mechanic from 1961 – 1966 for a service station in Parrish, Alabama; and worked in maintenance for Gold Kist Feed Mill from 1966 – 2000 in Jasper, Alabama; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with Pleural Disease on or about January 30, 2006.

10.    Plaintiff **ROGER SEYMORE**, a resident of Mobile, Alabama, contracted one or more asbestos-related diseases including Lung Cancer. Plaintiff was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment while employed.

17

During the course of his employment, Plaintiff worked, including but not limited to, as a laborer for Alan Seymore General Contractor from 1966 – 1974 in Sykesville, Maryland; as a paratrooper in the U.S. Army from 1974 – 1975 in North Carolina, Georgia; as an equipment operator for Carroll County from 1976 – 1978 in Westminster, Maryland; ran a printing press for McGregor Printing Company from 1978 – 1980 in Westminster, Maryland; as a truck driver for J.J. Hook Trucking Company during the 1980's in Lawnsdown, Maryland; as a truck driver for TRX from 1984 – 1988 in New Oxford, Pennsylvania; as a truck driver for Fendley Transportation from 1990 – 1992 in Fairhope, Alabama; worked in maintenance for Courtalds Chemical Plant from 1992 – 2001 in Axis, Alabama; as an equipment operator for Ben Rattcliff Construction from 2004 – 2005 in Mobile, Alabama; as a heavy equipment operator for Northrop Shipyard in 2005 in Pascagoula, Mississippi; as a heavy equipment operator for SJ&L Contractor from 2005 to present in Mobile, Alabama; around furnaces, boilers, turbines, and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff was diagnosed with Lung Cancer on or about March 14, 2005.

18

11.    Plaintiff Lillian H. Williams' Decedent **MANUEL R. WILLIAMS, SR.,** a resident of Warrior, Alabama, prior to his death, contracted one or more asbestos-related diseases including Asbestosis from which he died. Decedent was continually exposed to asbestos-containing products, produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by defendants as specified herein during his employment, and in his environment until his death.

During the course of his employment, Plaintiff's Decedent worked, including but not limited to, the US Army Infantry as a machine gunner from 1953 – 1954 at Ft. Rucker, Alabama and in Korea; at Southern Bell Telephone and Telegraph Company in asbestos insulation in Birmingham, Alabama; at the Gorgas Steam Plant as an asbestos insulator for over a year in Jasper, Alabama; at the Pratt Steam Plant in asbestos insulation for over a year in Pratt, Alabama; at the 3M Chemical Plant for over one year in asbestos insulation in Decatur, Alabama; at the Winter's Creek Steam Plant "Hot Shooting" maintenance for four years in Stevenson, Alabama, before he retired in 1990, round furnaces, boilers, turbines and other industrial equipment in his workplace, which contained significant amounts of asbestos-containing products and materials.

Plaintiff's Decedent died of Asbestosis as a consequence of exposure to asbestos and asbestos-containing materials and products, on or about, January 30, 2005. This case is brought by his spouse and personal representative Lillian H. Williams, a resident of Morris, Alabama.

## BACKGROUND FACTS — THE DEFENDANTS

12.     The Plaintiffs adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

13.     The term "Producer Defendant" refers to each and every one of those defendants which produced and/or manufactured asbestos-containing products and/or materials and placed the asbestos-containing products and/or materials into the stream of commerce.

14.     The following defendants are "Producer Defendants". (The asbestos-containing products produced by each defendant that have been identified at plaintiffs workplace, during his employment years there, are set out hereinbelow).

15.     **A.O. SMITH ELECTRICAL PRODUCTS COMPANY**, a division of **A.O. SMITH CORPORATION** is a New York corporation

whose principal place of business is 11270 West Park Place, 1 Park Plaza, Milwaukee, Wisconsin 53224

    - Asbestos containing products, including but not limited to Electrical Products including, but not limited to Motors.

    16.    **A.O. SMITH CORPORATION** is a New York corporation whose principal place of business is 11270 West Park Place, 1 Park Plaza, Milwaukee, Wisconsin 53224.

    - Asbestos containing products, including but not limited to Electrical Products including, but not limited to Motors.

    17.    **ALBANY INTERNATIONAL** is a New York corporation whose principal place of business is 1373 Broadway, Albany, New York 12204.

    - Asbestos containing products, including but not limited to Paper Machine Clothing.

    19.    **ALLIS-CHALMERS CORPORATION** is a Delaware Corporation whose principle place of business is 1126 South 70th Street, West Allis, Wisconsin, 53214.

    - Asbestos containing products, including but not limited to Boilers.

    20.    **AMERICAN STANDARD, INC.** is a Delaware corporation whose principal place of business is One Centennial Avenue, Piscataway, New Jersey 08855.

- Asbestos containing products, including but not limited to Air

    Conditioning Systems;

- Asbestos containing products, including but not limited to Plumbing

    Products;

- Asbestos containing products, including but not limited to Automotive

    Breaking Systems.

21.    **ARVINMERITOR, INC.** is a Nevada Corporation whose

principal place of business is 2135 West Maple Road, Troy, Michigan, 48084.

- Asbestos containing products, including but not limited to Asbestos

    brakeshoes;

- Asbestos containing products, including but not limited to Friction

    materials.

22.    **ASTEN JOHNSON, INC.,** individually and as successor-in-

interest to **ASTEN, INC.,** successor-in-interest by way of name change to

**ASTEN GROUP, INC.,** formerly trading as **ASTEN-HILLS**

**MANUFACTURING CO.** is a Delaware corporation whose principal place of

business is 1013 Centre Road, Wilmington, Delaware 19805.

- Asbestos containing products, including but not limited to Asbestos

    Felt;

- Asbestos containing products, including but not limited to Bestmesh
  Felt;

- Asbestos containing products, including but not limited to Calcot Felt;

- Asbestos containing products, including but not limited to Syncot Felt;

- Asbestos containing products, including but not limited to Synbest
  Felt;

- Asbestos containing products, including but not limited to Thermesh
  Felt;

- Asbestos containing products, including but not limited to Ventmesh
  Felt.

23.     **BAYER CROPSCIENCE, INC.**, individual and as successor to
**AVENTIS CROPSCIENCE USA, INC.** f/k/a **RHONE-POULENCE AG
CO.**, f/k/a **AMCHEM, PRODUCTS, INC., BENJAMIN FOSTER CO**. is a
New York corporation whose principal place of business is 600 Madison
Avenue, New York, NY  10022.

- Asbestos containing products, including but not limited to Benjamin
  Foster Products;

- Asbestos containing products, including but not limited to Roofing
  Products.

24.     **BECHTEL CONSTRUCTION COMPANY** is a Nevada

Corporation whose principal place of business is 50Beale Street, San Francisco, California, 94105.

- Asbestos containing products, including but not limited to Contractor liability defendant.

25. **BELL & GOSSETT**, a subsidiary of **ITT INDUSTRIES** is an Indiana corporation whose principal place of business is 4 West Red Oak Lane, White Plains, New York 10604. 8200 N. Austin Avenue, Morton Grove, Illinois 60053.

- Asbestos containing products, including but not limited to Compressors.

26. **BONDEX INTERNATIONAL INC.** is an Ohio corporation whose principal place of business is 20 Casey Street, Gilroy, California 95020.

- Asbestos containing products, including but not limited to Paper Products;

- Asbestos containing products, including but not limited to Drywall Products.

27. **BORG WARNER CORPORATION** by its successor in interest, **BORGWARNER MORSE TEC INC.** is an Ohio corporation whose principal place of business is 200 S. Michigan Street, Chicago, Illinois 60604.

- Asbestos containing products, including but not limited to Brake

  Linings (1971 – 1975);

- Asbestos containing products, including but not limited to Clutch

  Linings (1928 – 1980's).

28.    **BP AMERICA**, as successor in interest to **AMOCO CHEMICAL COMPANY, AMOCO CHEMICALS COMPANY, PLASKON ELECTRONIC MINERALS, AVISUN CORP., CARBORUNDUM, ATLANTIC RICHFIELD COMPANY/ARCO METALS**, as successor in interest to **ANACONDA AMERICAN BRASS COMPANY, AMERICAN BRASS COMPANY, AND ANACONDA COMPANY** is a Delaware corporation whose principal place of business is 200 East Randolph Drive, Chicago, Illinois, 60601

- Asbestos containing products, including but not limited to Grinding

  products.

29.    **BP AMOCO CHEMICAL COMPANY** is a Delaware corporation whose principal place of business is 200 East Randolph Drive, Chicago, Illinois, 60601.

- Asbestos containing products, including but not limited to Grinding

  products.

25

30. **BUFFALO PUMP INC.** is a Delaware corporation whose principal place of business is 874 Oliver Street, North Tonawanda, New York 14120.

- Asbestos containing products, including but not limited to Pumps.

31. **CLARK-RELIANCE CORPORATION** is a Delaware corporation whose principal place of business is 16633 Foltz Industrial Parkway, Strongsville, Ohio 44149.

- Asbestos containing products, including but not limited to Electric

Mot Windows Update.lnk ors.

32. **CLEAVER BROOKS,** a division of **AQUA CHEM** is a Wisconsin corporation whose principal place of business is 7800 North 113th Street, Milwaukee, Wisconsin 53201.

- Asbestos containing products, including but not limited to Boilers.

33. **CONWED CORPORATION** is a Delaware corporation whose principal place of business is 208 S. LaSalle Street, Chicago, Illinois 60604.

- Asbestos containing products, including but not limited to Ceiling tiles.

34. **COOPER INDUSTRIES, LLC,** f/n/a **COOPER INDUSTRIES, INC.,** individually and as successor-in-interest to **CROUSE-**

26

**HINDS** is an Ohio corporation whose principal place of business is Wolf & 7th Streets, Syracuse, NY 13221.

- Asbestos containing products, including but not limited to Electrical Products;

- Asbestos containing products, including but not limited to Chico Belden wire and cable;

- Asbestos containing products, including but not limited to Crouse-Hinds electrical products ;

- Asbestos containing products, including but not limited to Chico packing;

- Asbestos containing products, including but not limited to Arrow-Hart electrical products;

- Asbestos containing products, including but not limited to Bussman electrical products;

- Asbestos containing products, including but not limited to Cooper lighting products;

- Asbestos containing products, including but not limited to McGraw-Edson electrical products.

35.    **CRANE CO.**, individually and as successor in interest to

**DEMING PUMP, CYCLOTHERM,  HYDRO-AIRE,  LEAR ROMEC,**

**RESISTOFLEX, SWARTWOUT CO., STOCKHAM VALVE COMPANY, WEINMAN PUMP COMPANY, CHEMPUMP,** and **BURKS PUMPS** is an Alaska corporation whose principal place of business is 100 Stamford Place, Stamford, Connecticut 06902.

- Asbestos containing products, including but not limited to Gaskets;

- Asbestos containing products, including but not limited to Hydraulic Packing;

- Asbestos containing products, including but not limited to Ring Packing;

- Asbestos containing products, including but not limited to Rope Packing;

- Asbestos containing products, including but not limited to Yarn.

36. **CRANE PUMPS & SYSTEMS, INC.,** individually and as successor to all pump companies acquired by **CRANE** is a Delaware corporation whose principal place of business is 420 Third Street, Piqua, Ohio, 45356.

- Asbestos containing products, including but not limited to Pumps;

- Asbestos containing products, including but not limited to Valves.

37.     **CUTLER HAMMER**, currently referred to as **EATON ELECTRICAL, INC.** is a Delaware corporation whose principal place of business is 4201 N. 27th Street, Milwaukee, Wisconsin 53216.

- Asbestos containing products, including but not limited to Electrical Products.

38.     **EATON CORPORATION** is a Delaware corporation whose principal place of business is 1209 Orange Street, Wilmington, Delaware 19801.

- Asbestos containing products, including but not limited to Industrial Automation Products.

39.     **EMERSON ELECTRIC CO.** is a Missouri corporation whose principal place of business is 8000 W. Florissant Avenue, Saint Louis, Missouri 63136.

- Asbestos containing products, including but not limited to Motors;

- Asbestos containing products, including but not limited to Starters;

- Asbestos containing products, including but not limited to Electrical Products.

40.     **EXTECO, INC.**, f/k/a **THERMO ELECTRIC CO., INC.** is a Delaware corporation whose principal place of business is 109 North 5th Street, Saddle Brook, New Jersey 07663.

29

- Asbestos containing products, including but not limited to Electrical Wire.

41. **FLAME REFRACTORIES, INC.** is a Florida Corporation whose principal place of business is 22466 Flame Road, Oakboro, NC 28129.

- Asbestos containing products, including but not limited to Hot Top Refractories.

42. **FMC CORPORATION**, individually and on behalf of its former **CONTRUCTION EQUIPMENT GROUP**, and former **PEERLESS PUMP DIVISION, COFFIN TURBO PUMPS**, and **CHICAGO PUMP**, business is a Delaware corporation whose principal place of business is 200 E. Randolph Drive, Chicago, Illinois 60601.

- Asbestos containing products, including but not limited to Pumps;

- Asbestos containing products, including but not limited to Valves;

- Asbestos containing products, including but not limited to Cranes.

43. **FOSECO, INC.** is a New York corporation whose principal place of business is 277 Park Avenue, New York, New York 10017.

- Asbestos containing products, including but not limited to "Hot Tops" Insulating cements.

44.    **GARLOCK SEALING TECHNOLOGIES L.L.C.** is a
Delaware corporation whose principal place of business is 1666 Division Street,
Palmyra, New York 14522.

- Asbestos containing products, including but not limited to Asbestos
  Cloth (1907 – 1980);

- Asbestos containing products, including but not limited to Gaskets
  (1907 – 1980);

- Asbestos containing products, including but not limited to Packing
  (1907 – 1980);

- Asbestos containing products, including but not limited to Ring Packing
  (1907 – 1980);

- Asbestos containing products, including but not limited to Rope
  Packing (1907 – 1980);

- Asbestos containing products, including but not limited to Sheet
  Packing (1907 – 1980);

- Asbestos containing products, including but not limited to Sheet
  Gaskets (1907 – 1980);

- Asbestos containing products, including but not limited to Valve
  Packing (1907 – 1980).

45.    **GENERAL ELECTRIC CO.** is a New York corporation whose principal place of business is 1 River Road, Schnecectady, New York 12301.

- Asbestos containing products, including but not limited to Cable;

- Asbestos containing products, including but not limited to Furnaces;

- Asbestos containing products, including but not limited to Turbines;

- Asbestos containing products, including but not limited to Wire;

- Asbestos containing products, including but not limited to Welding Electrodes;

- Asbestos containing products, including but not limited to Welding Machines.

46.    **GOODYEAR TIRE AND RUBBER CO.** is a Delaware corporation whose principal place of business is 1144 E. Market Street. Department 616, Akron, Ohio  44316.

- Asbestos containing products, including but not limited to Gaskets.

47.    **GOULDS PUMPS INC.** is a Delaware corporation whose principal place of business is 300 Willow Block Office Park, Fairport, New York 14450.

- Asbestos containing products, including but not limited to ITE electrical products including breakers

- Asbestos containing products, including but not limited to Century
motors.

48.     **HARNISCHFEGER CORPORATION** is a Wisconsin
corporation whose principal place of business is 4400 W. National Avenue,
Milwaukee, Wisconsin 53201.

- Asbestos containing products, including but not limited to Cranes.

49.     **HOBART BROTHERS COMPANY** is an Ohio corporation
whose principal place of business is 3600 W. Lake Avenue, Glenview, Illinois
60025-5811.

- Asbestos containing products, including but not limited to Welding

    Products

- Asbestos containing products, including but not limited to Welding

    Flux;

- Asbestos containing products, including but not limited to Welding

    Electrodes;

- Asbestos containing products, including but not limited to Welding

    Machines;

- Asbestos containing products, including but not limited to Welding

    Rods.

50.   **IMO INDUSTRIES, INC.,** is an Delaware corporation whose principal place of business is 8730 Stony Point Parkway, #150, Richmond, Virginia, 23235.

- Asbestos containing products, including but not limited to Turbines.

51.   **INDUSTRIAL HOLDINGS CORPORATION**, f/k/a **THE CARBORUNDUM COMPANY** is a New York corporation whose principal place of business is 101 Hudson Street, Jersey City, New Jersey 07302.

- Asbestos containing products, including but not limited to Grinding Mills.

52.   **INGERSOLL-RAND COMPANY** is a New Jersey corporation whose principal place of business is 200 Chestnut Ridge Road, Woodcliff, New Jersey 070677.

- Asbestos containing products, including but not limited to Air Compressors;

- Asbestos containing products, including but not limited to Impact Wrenches;

- Asbestos containing products, including but not limited to Blowers;

- Asbestos containing products, including but not limited to Industrial Products;

- Asbestos containing products, including but not limited to Pumps.

53. **ITT INDUSTRIES INC.** is an Indiana corporation whose

principal place of business is 4 West Red Oak Lane, West Plains, New York

10604.

- Asbestos containing products, including but not limited to

Compressors.

54. **JOHN CRANE, INC.**, f/k/a **JOHN CRANE PACKING**

**COMPANY** is a Delaware corporation whose principal place of business is

6400 West Oakton Street, Morton Grove, Illinois 60053.

- Asbestos containing products, including but not limited to Gaskets;

- Asbestos containing products, including but not limited to Packing.

55. **KAISER GYPSUM COMPANY, INC.** is a Washington

corporation whose principal place of business is P. O. Box 8019

Walnut Creek, California 94596.

- Asbestos containing products, including but not limited to Cover-Tex

Wall Texture;

- Asbestos containing products, including but not limited to Dual Purpose

Joint Compound;

- Asbestos containing products, including but not limited to Finishing

Compound;

- Asbestos containing products, including but not limited to Joint Compound;

- Asbestos containing products, including but not limited to Kaiser Mineral Fiberboard;

- Asbestos containing products, including but not limited to K-Spray Ceiling Texture (1961 – 1975);

- Asbestos containing products, including but not limited to Masonry Cement;

- Asbestos containing products, including but not limited to Null-A-Fire Board (1969 – 1978);

- Asbestos containing products, including but not limited to One-Day Joint Compound;

- Asbestos containing products, including but not limited to Plastic Cement;

- Asbestos containing products, including but not limited to Plastic Cement;

- Asbestos containing products, including but not limited to Plastic Gun Cement;

- Asbestos containing products, including but not limited to Premix Finishing Compound.

56.   **KELLY-MOORE PAINT COMPANY, INC.** is a California corporation whose principal place of business is 987 Commercial Street, San Carlos, California 94070.

- Asbestos containing products, including but not limited to Bedding Cement (1960 – 1970);

- Asbestos containing products, including but not limited to Deco-Tex Ceiling Texture (1964 – 1978);

- Asbestos containing products, including but not limited to Paco All-Purpose Joint Compound (1960 – 1978)

- Asbestos containing products, including but not limited to Paco Finishing Compound (1960 – 1977);

- Asbestos containing products, including but not limited to Paco Joint Cement;

- Asbestos containing products, including but not limited to Paco Joint Compound (1960 – 1978);

- Asbestos containing products, including but not limited to Paco Quik-Set Joint Compound (1963 – 1978);

- Asbestos containing products, including but not limited to Paco Ready Mix Joint Compound (1963 – 1978);

- Asbestos containing products, including but not limited to Paco Spray Texture;

- Asbestos containing products, including but not limited to Paco Taping Compound (1970 – 1977);

- Asbestos containing products, including but not limited to Paco Texture;

- Asbestos containing products, including but not limited to Paco Texture Paint;

- Asbestos containing products, including but not limited to Paco Topping Compound (1963 – 1977);

- Asbestos containing products, including but not limited to Paco Wall Texture (1960 – 1978);

- Asbestos containing products, including but not limited to Paco-Tex Wall Texture.

57.     **THE LINCOLN ELECTRIC COMPANY** is an Ohio corporation whose principal place of business is 22801 St. Clair Avenue, Cleveland, Ohio 44114.

- Asbestos containing products, including but not limited to Welding Rods;

- Asbestos containing products, including but not limited to Welding
Flux.

58.   **MAREMONT CORPORATION** is an Illinois corporation
whose principal place of business is One Noblitt Plaza, Columbus, Indiana
47202.

- Asbestos containing products, including but not limited to Brake
Linings;

- Asbestos containing products, including but not limited to Brake
Shoes.

59.   **METROPOLITAN LIFE INSURANCE COMPANY** is a New
York corporation whose principal place of business is 1 Madison Avenue, New
York, New York 10010.

- Insurance company.

60.   **NIKKO MATERIALS USA, INC.,** d/b/a **GOULD
ELECTRONICS INC.,** individually and as successor in interest to **GOULDS,
INC., IMPERIAL CORPORATION, EASTMAN CORPORATION,
IMPERIAL EASTMAN CORPORATION, ITE CIRCUIT BREAKER
COMPANY, AND CENTURY ELECTRIC** is an Arizona Corporation whose
principal place of business is 34929 Curtis Boulevard, Eastlake, Ohio, 449095.

- Asbestos containing products, including but not limited to Electrical;

- Asbestos containing products, including but not limited to Motors and breakers.

61. **OGLEBAY NORTON COMPANY,** is a Delaware corporation whose principal place of business is North Point Tower, 1001 Lakeside Avenue, 15th Floor, Cleveland, Ohio, 44114.

- Asbestos containing products, including but not limited to Hot Top Refractories.

62. **OWENS-ILLINOIS, INC.** is a Delaware corporation whose principal place of business is One Segate Tax 5, Toledo, Ohio 43666.

- Asbestos containing products, including but not limited to Kaylo Block Insulation (1944 – 1958);

- Asbestos containing products, including but not limited to Kaylo Pipe Covering (1944 – 1958).

63. **P&H CRANES** is a Wisconsin corporation whose principal place of business is 4400 W. National Avenue, Milwaukee, Wisconsin 53201.

- Asbestos containing products, including but not limited to Cranes.

64. **PNEUMO ABEX LLC,** successor in interest to **ABEX CORPORATION** is a Delaware corporation whose principal place of business is One Liberty Lane, Hampton, New Hampshire 03842.

- Asbestos containing products, including but not limited to Industrial

  Automotive;

- Asbestos containing products, including but not limited to Aerospace

  Segments.

65. **RAPID AMERICAN CORPORATION** is a Delaware

corporation whose principal place of business is 888 Seventh Avenue, New

York, New York 10106.

- Asbestos containing products, including but not limited to Cements;

- Asbestos containing products, including but not limited to Pipe

  Covering.

66. **ROCKWELL AUTOMATION**, successor by merger to

**ALLEN-BRADLEY CO., LLC** is a Delaware corporation whose principal

place of business is 777 E. Wisconsin Avenue, Suite 1400, Milwaukee,

Wisconsin 53202.

- Asbestos containing products, including but not limited to Pumps;

- Asbestos containing products, including but not limited to Valves.

67. **SQUARE D COMPANY** is a Delaware corporation whose

principal place of business is 1415 South Roselle Road, Palatine, Illinois 60067.

- Asbestos containing products, including but not limited to Electrical

  Products;

41

- Asbestos containing products, including but not limited to Braker

  Boxes;

- Asbestos containing products, including but not limited to Braker

  Panels;

- Asbestos containing products, including but not limited to Crane

  Brakes.

68. **SUNBEAM PRODUCTS INCORPORATED,** fka **SUNBEAM CORPORATION** is a Delaware corporation whose principal place of business is 100 West Tenth Street, Wilmington, Delaware, 19801.

- Asbestos containing products, including but not limited to Furnaces.

69. **SURFACE COMBUSTION** is an Ohio corporation whose principal place of business is 2375 Dorr Street, Toledo, Ohio, 43607.

- Asbestos containing products, including but not limited to Furnaces.

70. **TH AGRICULTURE & NUTRITION, LLC** is a Delaware corporation whose principal place of business is 100 W. 10th Street, Wilmington, Delaware 19801.

- Asbestos containing products, including but not limited to Fiber.

71. **THE MARLEY-WYLAIN COMPANY,** d/b/a **WELL-MCLAIN COMPANY, INC.** is an Iowa corporation whose principal place of business is 1900 Shawnee Mission Parkway, Mission Woods, Kansas 66205.

- Asbestos containing products, including but not limited to Boilers;

- Asbestos containing products, including but not limited to Fuel Oil
  Heaters.

72.  **UNION CARBIDE CORPORATION** is a New York

corporation whose principal place of business is 335 Madison Avenue, New

York, NY 10017.

- Asbestos containing products, including but not limited to Asbestos
  containing products, Bakelite Panels (1939 – 1974);

- Asbestos containing products, including but not limited to Panelboard
  (1939 – 1974);

- Asbestos containing products, including but not limited to Calidria –
  Raw Fiber;

- Asbestos containing products, including but not limited to Welding
  Flux.

73.  **UNIROYAL FIBER & TEXTILE DIVISION OF**

**UNIROYAL, INC.** is a New Jersey corporation whose principal place of

business is 70 Great Hill Road, Naugatuck, Connecticut, 06770.

- Asbestos containing products, including but not limited to Asbestos
  cloth.

74.   **VIACOM INC.,** successor by merger to **CBS CORPORATION**

f/k/a **WESTINGHOUSE ELECTRIC CORPORATION** is a Delaware

corporation whose principal place of business is 1515 Broadway, New York,

New York 10036

- Asbestos containing products, including but not limited to all kinds of

  electrical products;

- Asbestos containing products, including but not limited to Wire;

- Asbestos containing products, including but not limited to Cable;

- Asbestos containing products, including but not limited to Gaskets;

- Asbestos containing products, including but not limited to Packing;

- Asbestos containing products, including but not limited to Panels;

- Asbestos containing products, including but not limited to Paper;

- Asbestos containing products, including but not limited to Turbines;

- Asbestos containing products, including but not limited to

  Transformers;

- Asbestos containing products, including but not limited to Terminals;

- Asbestos containing products, including but not limited to Breakers;

- Asbestos containing products, including but not limited to Motors;

- Asbestos containing products, including but not limited to Micarta;

- Asbestos containing products, including but not limited to Welding Rods;

- Asbestos containing products, including but not limited to Welding Electrodes;

- Asbestos containing products, including but not limited to Welding Machines.

75.    The term "Specifying Defendant" refers to each and every one of those defendants which specified the use of asbestos-containing products and/or materials on equipment, including both equipment it produced, manufactured, distributed, sold, and/or placed into the stream of commerce and equipment produced, manufactured, distributed, sold and/or placed into the stream of commerce by others.

76.    The term "Distributor Defendant" refers to each and every one of those defendants which distributed, sold and/or placed into the stream of commerce asbestos-containing products and/or materials, including both their own asbestos-containing products and/or materials and asbestos-containing products and/or materials produced or manufactured by others.

77.    The term "Contractor Defendant" refers to each and every one of those defendants which installed asbestos-containing products and/or materials at the worksites, including both their own asbestos-containing products and/or

materials and asbestos-containing products and/or materials produced or manufactured by others.

78.     The following defendant is both a "Producer Defendant" and a "Contractor Defendant":

79.     **FOSTER-WHEELER CORPORATION** is a New York corporation whose principal place of business is 110 Lookerman Square, Dover, Delaware 19904.

- Asbestos containing products, including but not limited to Boilers;

- Asbestos containing products, including but not limited to Contract Units;

- Asbestos containing products, including but not limited to Appartemart Boiler Parts;

80.     The following defendants are both "Distributor Defendants" and "Contractor Defendants":

81.     **HONEYWELL, INC.**, specifically excluding liability for **NARCO**, individually and as successor to **ALLIED SIGNAL, BENDIX, WHEELABRATOR, RUST ENGINEERING**, AND **ALLIED CHEMICAL** is a Delaware corporation whose principal place of business is Honeywell Plaza, Minneapolis, Minnesota 55408.

- Asbestos containing products, including but not limited to Pumps and

  Valves;

- Asbestos containing products, including but not limited to Electrical

  Products (controls, wires, etc.).

82.    Each defendant is sued (a) in its individual capacity, (b) as a

successor in interest to each of those entities specifically identified herein as the

Defendant's predecessor in interest, (c) as a successor in interest to each of

those entities which, through discovery or otherwise, is identified during the

course of litigation as the Defendant's predecessor in interest, (d) as an alter ego

to each of those entities specifically identified herein as the Defendant's adjunct

or instrumentality, and (e) as an alter ego to each of those entities which,

through discovery or otherwise, is identified during the course of litigation as

the Defendant's adjunct or instrumentality.

**DEFENDANTS' CONDUCT AND PLAINTIFF'S DECEDENT'S INJURY**

83.    The Plaintiff adopts, alleges, and incorporates herein by reference

all of the averments and allegations set forth in the preceding paragraphs of this

complaint as if fully set forth herein.

84.    The Defendants acted by and through their agents, servants, and

employees, and are liable for the conduct of their agents, servants, and

employees.  Whenever this complaint refers to Defendants' actionable conduct,

47

it includes the conduct of Defendants' agents, servants, and employees.

85.    Whenever this complaint refers to asbestos-containing products and/or materials, it includes, without limitation, all products and/or materials containing any amount of any form of asbestos and/or any form of talc.

86.    The Defendants, at all times relevant to this complaint, knew, or in the exercise of ordinary care should have known, that asbestos was poisonous and harmful to human beings and that asbestos-containing products and/or materials posed a serious health hazard to humans, particularly in connection with the human lungs and respiratory system but also in connection with other vital organs.

87.    Plaintiffs and/or Plaintiffs' Decedents were injured and/or died as a direct and proximate consequence of the conduct of the Defendants, which were negligent in some or all of the following respects:

A.    Producing and/or manufacturing and placing into the stream of commerce asbestos-containing products and/or materials.

B.    Distributing, selling, and/or placing into the stream of commerce asbestos-containing products and/or materials, including their own asbestos-containing products and/or materials and asbestos-containing products and/or materials produced or manufactured by others.

C.    Installing asbestos-containing products and/or materials at

the Worksites, including both their own asbestos-containing products and/or materials produced or manufactured by others.

D.    Specifying the use of asbestos-containing products and/or materials on equipment, including both, equipment produced, manufactured, distributed, sold and/or placed into the stream of commerce by the Defendants, and on equipment produced, manufactured, distributed, sold, and/or placed into the stream of commerce by others.

E.    Marketing asbestos-containing products and/or materials to industries which Defendants knew, or should have known, would expose workers and their families to dust from such asbestos-containing products and/or materials.

F.    Failing to properly design and manufacture asbestos-containing products and/or materials.

G.    Failing to properly test asbestos-containing products and/or materials before they were released for consumer use.

H.    Failing to develop and to utilize a substitute material for asbestos-containing products and/or materials.

I.    Failing to specify for use on equipment safe substitutes for asbestos-containing products and/or materials.

J.    Failing to timely and adequately warn Plaintiffs Decedent of

the dangerous characteristics and serious health hazards associated with secondary exposure to asbestos-containing products and/or materials.

K.  Failing to provide Plaintiffs Decedent's with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect the Plaintiffs Decedent from being harmed and disabled by secondary exposure to asbestos-containing products and/or materials.

L.  Failing to take precautions to protect Plaintiffs Decedent from exposure to asbestos-containing products and/or materials while Plaintiffs Decedent was an invitee on premises occupied, controlled, and/or owned by the Defendants.

M.  Failing to place timely and adequate health warnings on the containers of asbestos-containing products and/or materials, and/or on the asbestos-containing products and/or materials themselves, and/or on equipment requiring or calling for the use of asbestos-containing products and/or materials.

N.  Failing to take reasonable precautions or to exercise reasonable care to publish, to adopt, and to enforce a safety plan and/or safe method of handling and installing asbestos-containing products and/or materials.

O.  Failing to recall and/or to remove from the stream of

commerce asbestos-containing products and/or materials despite knowledge of their unsafe and dangerous nature.

   P.  Engaging in a conspiracy or conspiracies to affirmatively misrepresent and/or to suppress material facts about the dangers of exposure to asbestos fibers and the seriousness of the health hazard posed by asbestos fibers.

   Q.  Specifically disregarding the safety of Plaintiffs Decedent and fraudulently concealing from Plaintiffs Decedent the dangerous nature of the asbestos fibers to which Plaintiffs Decedent was exposed.

   R.  Otherwise (a) causing and/or contributing to cause Plaintiffs Decedent to be exposed to asbestos-containing products and/or materials and/or (b) failing to prevent Plaintiffs Decedent from being secondarily exposed to asbestos-containing products and/or materials.

  88. The Defendants' actions were negligent, reckless, and willful and wanton and constituted an outrageous disregard for the health and safety of workers and their families, including Plaintiffs Decedent, who was exposed to asbestos-containing products and/or materials in his workplace.

## COUNT ONE

### Alabama Extended Manufacturer's Liability Doctrine

  89. The Plaintiff adopts, alleges, and incorporates herein by reference

all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

90. The initial cause of action for personal injury and wrongful death is grounded in the Alabama Extended Manufacturer's Liability Doctrine.

91. The asbestos-containing products and/or materials to which Plaintiffs Decedent was exposed were unreasonably dangerous when applied to their intended use in the usual and customary manner in that:

A. The asbestos fibers contained in the asbestos-containing products and/or materials are highly carcinogenic and otherwise injurious to the tissue of the human body when inhaled into the respiratory system or ingested into the digestive system.

B. The asbestos fibers contained in the asbestos-containing products and/or materials are fibrous by nature and increase in friability with exposure to heat or friction or by mere passage of time, so that such asbestos fibers are subject to being readily inhaled or ingested into the respiratory and digestive systems of person in the vicinity thereof.

92. The Defendants caused the unreasonably dangerous asbestos-containing products and/or materials to enter the market, as a result of which Plaintiffs Decedent was exposed and suffered grave and progressive bodily injuries and death.

93.     The Defendants knew or should have known in the exercise of ordinary care and diligence that the asbestos-containing products and/or materials were unreasonably dangerous. Nevertheless, the Defendants made no effort to recall the asbestos-containing products and/or materials from any buildings, including, without limitation, the Worksites. The Defendants thus allowed Plaintiffs Decedent to be exposed to the asbestos-containing products and/or materials without warning of the dangers thereof or taking preventive measures to protect Plaintiffs Decedent from asbestos exposure, as a proximate result of which Plaintiff's Decedent suffered grave and progressive bodily injury and death.

## COUNT TWO

### Negligence and Intentional Tort

94.     The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

95.     The second cause of action for personal injury and wrongful death is grounded in legal theories of negligence and intentional tort.

96.     The Defendants acted tortiously in concert with one another, and in some instances, intentionally, to advance, to pursue or to implement agreements concerning the misrepresentation, concealment, and/or destruction of scientific

and legal evidence concerning the health hazards of asbestos.

97. The Defendants reached an agreement or understanding to inflict a wrong against Plaintiffs Decedent and other similarly situated individuals. Moreover, the Defendants' minds met on the object or course of action, amounting to some mutual mental action coupled with an intent to commit the acts which resulted in the injuries and death to Plaintiffs Decedent. In short, the Defendants hatched a preconceived plan with unity of design and purpose to misrepresent, conceal and/or destroy scientific and/or legal evidence concerning the health hazards of asbestos. They intended to engage in a course of conduct which resulted in injuries, and the course of conduct was known to them through their officers, directors, agents, servants, and managers.

98. The Defendants' liability is joint for all of the tortious conduct and resultant injuries, as well as for the wanton behavior of each Defendant, including the wantonness of co-conspirators not sued herein.

99. The Defendants acted in concert along with other co-conspirators not sued herein with the intent to deceive and to misinform Plaintiffs Decedents and others about the health hazards of asbestos.

100. Plaintiffs Decedents and others similarly situated were the targets of the intentional acts of deception and misrepresentation.

101. In particular, the Defendants, acting through their own medical

54

departments and in conjunction with those of their co-conspirators, including their trade associations, investigated the health hazards faced by workers, thereby learning, or in the exercise of reasonable care, having to learn, of the hazards of asbestos.

102. Acting maliciously, the Defendants initially suppressed and misrepresented the results of investigations, actively concealing the information from customers, from the users of the asbestos-containing products and/or materials, from their own workers, from the employees of contractors working upon their premises, and from governmental and medical authorities. Ultimately, however, the Defendants conspired to destroy or to alter records of knowledge in order to prevent the scientific and medical evidence from being discovered by the victims of their conspiracy and to forestall regulatory efforts and legislation intended to protect innocent workers from the invisible dusty death.

103. Each Defendant either, (a) actively took part in the suppression, concealment, misrepresentation, and eventual destruction of data and evidence, and/or (b) furthered the plan or plans by cooperation, and/or (c) lent aid or encouragement to the actual wrongdoers, and/or (d) ratified and adopted the wrongdoers' acts done for their benefit.

104. The acts of the Defendants in furtherance of their plan of deception

were done intentionally or negligently, and in concert, rendering them each jointly and severally liable for the wanton behavior of the other Defendants and coconspirators not sued herein with whom they acted in concert.

105. As a result of the conspiratorial acts described above, the dangers of asbestos to the human respiratory and digestive systems were hidden from industry in particular and society in general, with the consequences (a) that asbestos-containing products and/or materials were installed in virtually every plant and building in the United States and a large part of the rest of the industrialized world, (b) that safe substitutes were not developed by industry until after plants and buildings had already been made hazardous by the application or installation of numerous asbestos-containing products and/or materials, and (c) that a large number of people who have come into contact with asbestos-containing products and/or materials have become ill or died as a result of the inhalation or ingestion of asbestos fibers.

106. Plaintiffs Decedent was among those who worked in the hidden danger of asbestos, sometimes unaware of the presence of asbestos and always unaware of the carcinogenic and other adverse properties of asbestos fibers. As a proximate consequence of the conspiratorial acts of the Defendants in affirmatively misrepresenting and/or suppressing evidence concerning the carcinogenic and other adverse properties of the asbestos-containing products

and/or materials, some of which were installed in or applied to the Worksites, Plaintiffs Decedent was caused to be exposed to, and was unable to protect himself from the asbestos fibers, and consequently, Plaintiffs Decedent was exposed to asbestos in his work environment, and thereby suffered grave and progressive bodily injuries and death.

## COUNT THREE

### Negligence in the course of employment

107. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

108. The third cause of action for personal injury and wrongful death is grounded in a legal theory of negligence and intentional tort.

109. Plaintiffs Decedents were exposed to dangerous and carcinogenic asbestos fibers.

110. The Defendants knew or should have known that Plaintiffs Decedents, in the course of their employment, were being exposed to asbestos-containing products and/or materials which would injure Plaintiffs Decedents, and the Defendants owed a duty of care to Plaintiffs Decedents to protect them from the dangers of exposure to the asbestos-containing products and/or materials.

111. The Defendants specifically disregarded the safety and health of Plaintiffs Decedents and failed to protect them from the carcinogenic and other adverse effects of the asbestos fibers to which he was exposed by (a) failing to warn Plaintiffs Decedents that they was being exposed to dangerous asbestos-containing products, and by (b) failing to remove the dangerous asbestos-containing products and/or materials promptly after the Defendants became aware of their presence and the dangers thereof.

120. The Defendants further concealed from Plaintiffs Decedents the carcinogenic and other adverse effects of the asbestos fibers to which they were exposed in their work environment.

121. As a proximate result of the conduct of the Defendants, Plaintiffs Decedents were exposed to dangerous and carcinogenic asbestos fibers which caused them grave bodily injury and death.

## COUNT FOUR

### Fraudulent Concealment / Misrepresentation / Alteration of Medical Studies /Conspiracy /Aiding and Abetting Conspiracy

122. As will be discussed below, the Defendants used a number of trade and industrial hygiene associations to further the goals of their conspiracy to control the dissemination of research and information regarding the hazards of

asbestos and other substances to lend an air of independence and legitimacy to the information which was published, albeit in edited form.

123. Defendant Metropolitan Life and other Defendants named herein, individually and/or as successors-in-interest of other corporations, and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufactures and distributors to injure Plaintiff's Decedent.

124. Defendants acted in the following fashion:

A. Metropolitan Life Insurance Company (Met Life) required a tangible quid pro quo from McGill University in the 1920s in exchange for them providing funding for a study of asbestos disease in Canadian miners. The study was never published and agents of Met Life materially misrepresented in the published literature the fact that asbestos miners developed asbestosis.

B. In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and others, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from pneumoconiosis, including asbestosis, including employees not directly involved in the manufacturing process. This

1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease. Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

C.  Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Associate Medical Director of Met Life (insurers of Manville, Raybestos, and others), that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure; i.e., the seriousness of the disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as fatal and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestosis as a disease process less serious than it actually is and was then known to be, and deletion of information concerning levels of exposure. As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and

to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

D.    In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke corporation, Johns-Manville corporation, Keasby & Mattison company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing, Thermoid Rubber co., Southern Asbestos Co., (whose liabilities have been assumed by H. K. Porter  Company), Union Asbestos and Rubber company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories.  Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur.  This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in any study.  On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made about scientific data resulting in numerous misstatements of fact being made at scientific meetings.

E.     On November 11, 1948, representatives of the following

conspirators met at the headquarters of Johns-Manville Corporation:

American Brake Block Division of American Brake and Shoe Foundry, Gatke

Corporation, Keasby & Mattison Company (whose assets and liabilities were

later purchased by H. K. Porter Company), Union Asbestos and Rubber

Company, and U. S. Gypsum Company.  U. S. Gypsum did not send a

representative to the meeting, but instead authorized Vandiver Brown of

Johns-Manville to represent its interest at the meeting and to take action on its

behalf.

F.     At the November 11, 1948, meeting, these Defendants and

their representatives decided to exert their influence to materially alter and

misrepresent material facts about the substance of research started by Dr.

Leroy Gardner at the Saranac Laboratories beginning in 1936.  Dr. Gardner's

research involved the carcinogeniucity  of asbestos in mice and also included

an evaluation of the health effects of asbestos on humans with a critical

review of the then-existing standards of dust exposure from asbestos and

asbestos-containing products.

G.     At this meeting, the Defendants intentionally and

affirmatively determined that Dr. Gardner's work should be edited to

specifically delete material facts about the cancer-causing propensity of

62

asbestos and the health effects of asbestos on humans and critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these Defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza. These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public in general and the class of persons exposed to asbestos, including Plaintiff's Decedent.

H. As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January 1951, in the Archives of Industrial Hygiene and Occupational Medicine (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLV's). Furthermore, that article made a false claim that the published report was the complete survey of Dr. Gardner's work. The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

I.   Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that the inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

J.   The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association: Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), Rapid American Corporation (successor to Philip Carey and Quebec Asbestos Corporation, National Gypsum Company (n/k/a Asbestos Claims Management Corporation), Flintkote, Cape Asbestos, Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the AMA Archives of Industrial Health in 1951. Evidence of the Q.A.M.A., as well as correspondence from Co-conspirators, indicates close monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A's members.

K.   Defendants who were members of the Q.A.M.A. began, on or about 1950, to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature

64

on this subject and then touting and disseminating this literature to the public

and to organizations and legislative bodies responsible for regulatory controls

of asbestos with the specific intent of misrepresenting the existing scientific

information and suppressing contrary scientific data in their possession and

control.

L.     This plan of misrepresentation and influence over the

medical literature began on or about 1950 when the Q.A.M.A. members

selected Saranac Laboratories to do an evaluation of whether cancer was

related to asbestos.  After a preliminary report authored by Dr. Vorwald in

1952 indicated that a cancer/asbestos relationship might exist in experimental

animals, the Q.A.M.A. members refused to further fund the study and it was

terminated and never publicly discussed.

M.     As a result of the termination of this study, these Defendants

fraudulently withheld information from the public and affirmatively

misrepresented to the public and responsible legislative and regulatory bodies

that asbestos did not cause cancer, including affirmative misrepresentations by

conspirators' agents Kenneth W. smith, M.D., Paul Cartier, M.D., Arthur J.

Vorwald, M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan

Sabourin, said misrepresentations being directed to inter alia, U. S.

Government officials, Canadian Government officials, U. S. National Cancer

Institute, other medical organizations, and the general public, including Plaintiff's Decedent.

      N.    Subsequently, the Q.A.M.A. Defendant conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In 1957, Drs. Braun and Truan reported to the Q.A.M.A. that asbestosis did increase a worker's chances of incurring lung cancer.

      O.    The Q.A.M.A. Defendants thereafter caused, in 1958, a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the Q.A.M.A. The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

      P.    By falsifying and causing publication of studies concluding that the asbestos exposure did not cause lung cancer and simultaneously omitting a documented Finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively misrepresented to the public and concealed from the public the extent of risk associated with inhalation of asbestos fibers.

Q.     In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

R.     The fraudulent misrepresentation beginning in 1946, as elaborated above and continuing with publication of the 1958 Braun/Truan study, influenced the standard set for the TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

S.     In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risk involved in inhalation of asbestos products.

T.     In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories.  The following conspirators were in attendance:  Central Mining & Investment Corporation, Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Cartier, Sabourin, and LeChance.

U.     At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed.  In an affirmative attempt to mislead the

67

public about the extent of health risk associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent publication of the record of his 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals and thereby fraudulently misrepresenting existing data, albeit secret, that could not be publicized because of the secret provisions contained in the 1936 Saranac agreement required by the asbestos industry members.

V.    The following conspirators were members of the Magnesia Insulation Manufactures Association MIMA):  Philip-Carey Corporation (predecessors to Rapid American Corporation), Johns-Manville, and others.

W.    In 1955, these conspirators caused to be published the MIMA 85% Magnesia insulation Manual.  This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

X.    The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI):  Garlock, Uniroyal, Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newell), National

68

Gypsum (n/k/a Asbestos claims Management Corporation), Cape Asbestos and others.

Y.    In 1947, the members of the ATI, received a report from W.C.L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure.  These Defendants and Metropolitan Life caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and classes of persons exposed to asbestos that the then-existing TLV was acceptable.  Thereafter, these Defendant conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluation of TLVs for asbestos exposure.

Z.    In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products.  National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear

respirators and fraudulently concealed form such applicators the need for respirators.

AA.  In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D., caused to be published in the AMA Archives of Industrial Health, an article entitled A Pulmonary Disability in Asbestos Workers.  This published study materially altered the results of an earlier study in 1949 concerning the same set of workers.  This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

BB.  In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as an agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies which demonstrated that positive evidence did exist.

CC.  In 1957, the members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and

70

also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

DD.   In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irvin J. Selikoff.  Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

EE.   In 1970, through their agents, defendants The Celotex Corporation (predecessor of Rapid American Corporation) and Cary-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease.  This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

FF.   All Conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

GG.   Certain of the Defendants and/or co-conspirators, including but not limited to Westinghouse Electric Corporation, Metropolitan Life,

Raybestos Manhattan, Johns-Manville, Dresser Industries, Harbison-Walker, General Refractories, Pittsburgh Corning, PPG Industries, General Electric, Uniroyal, Owens-Illinois and Owens-Corning Fiberglas, were members of the Industrial Hygiene Foundation (AIHF). The IHF, touted by its industry members as an independent research agency, was used by the members of the asbestos industry to suppress the truth about asbestos and other substances and generate misleading or outright substances and generate misleading or outright false scientific publications. For example, in the 1940s the IHF was contacted by the Asbestos Textile Institute to conduct a study on asbestos dust. Mr. W. C. L. Hemeon, an industrial hygienist who worked for the IHF, completed the study and forwarded the report entitled Report on Preliminary dust Investigation for Asbestos Textile Institute in June 1947. Mr. Hemeon's report indicated that workers exposed to less than the recommended threshold limit value for asbestos were nonetheless developing diseases. The IHF never published this study and, in doing so, acted to conceal the study from the general public, including asbestos-exposed workers.

HH. As discussed infra, the IHF also assisted in the QAMA in the publication of the edited version of the Braum Truan report in 1958 which reported the conclusion, known to the IHF and its members to be false, that asbestos exposure did not increase the incidence of lung cancer.

II.   The Activities of IHF and its members substantially assisted the co-conspirators by retarding the development of knowledge about the hazards of asbestos.

JJ.   Metropolitan Life and other co-conspirators downplayed the seriousness of the hazard of exposure to diatomaceous earth by misleading public health officials in California.

125.   As a direct and proximate result of the above referenced conspirators intentional publication of deceptive and misleading medical data and information as described in the preceding paragraphs, and upon which data the Plaintiff's Decedent, and those charged with warning them reasonably relied, the Plaintiff's Decedent inhaled or otherwise were exposed to and ingested hazardous dust resulting in the injuries described in this Complaint.

126.   Additionally and alternatively, as a direct and proximate result of Metropolitan Life's actions and omissions as described above, the Plaintiff's Decedent was caused to remain ignorant concerning the danger of human exposure to asbestos and other substances, resulting in damage to the Plaintiff's Decedent by depriving the Plaintiff's Decedent, their employers, and the general public of opportunities to be aware of the hazards of asbestos and other substances exposure, and thus the opportunity to take proper safety precautions and/or avoid this exposure.  Because of this ignorance and intentional failure to

warn, the Plaintiff's Decedent inhaled, was exposed to, or otherwise ingested hazardous asbestos dust resulting in the injuries described above.

127. The conspirators fraudulently concealed from the Plaintiff's Decedent the alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiff's Decedent discovered said conduct following these diagnoses of asbestos-related injuries.

128. Certain of the Defendants, in addition, belong to the IHF and the AIA/NA also known as the Asbestos Information Association/North America and took part in certain activities wherein they individually and through their organization took steps to stop the dissemination of information with regard to asbestos and its hazards, took steps to influence proposed regulation of asbestos by making misleading statements regarding the health effects of asbestos and conspired to make false representations with regard to the safety and hazards of asbestos-containing products.

129. Certain of these Defendants in the IHF, AID/NA, ATI, the Asbestosis Research Council and/or other organizations, acting individually and as members of a conspiracy and as agents of other co-conspirators took steps to fraudulently conceal and/or fraudulently misrepresent the hazards of asbestos

which proximately caused injury and death to the Plaintiff's Decedent in the following manner:

(a)  published material or caused to be published material that the Defendants individually and/or through their organizations knew was false and incomplete in that the Defendants knowingly and deliberately deleted certain references to the known health hazards of asbestos and asbestos related products;

(b)  that the publication of these false and misleading reports and non-disclosure of documented reports on the health hazards of asbestos were done to maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos related products;

(c)  that the acts were perpetrated to influence in the Defendants' favor proposed legislation to regulate asbestos exposure, and

(d)  that the acts in question were also done to provide a defense in lawsuits brought for injury and death resulting from asbestos disease.

130.  In continuing their asbestos exposure, the Plaintiff's Decedent reasonably relied upon the published medical and scientific data about the purported lack of hazards of asbestos products, Defendants' false representations that their products were safe, and the lack of publicity about the hazards of asbestos, which he reasonably believed to be safe.

131.    Defendants individually, as members of a conspiracy, and as agents of other co-conspirators intended that the Plaintiff's Decedent rely upon the published reports regarding the safety of asbestos and asbestos-related products, to continue their exposure to those products.

132.    Defendants individually, as members of a conspiracy, and as agents of other co-conspirators are in a position of superior knowledge regarding the health hazards of asbestos and, therefore, the Plaintiff's Decedent had a right to rely on the published reports commissioned by the Defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos related products.  This conduct was directed at all state of the United State including Alabama.

133.    Certain Defendants belonged to The Mellon Institute and the Industrial Hygiene Foundation (IHF), which were institutes whose functions included involved in research and communications to member companies regarding the health effects of inhaling asbestos dust.  In 1935, The Mellon Institute conducted a meeting at which time a plan was developed where members of the asbestos industry would join together to combat publicity and dissemination of data on the hazards of asbestos.

134. Beginning in the early 1940's, the IHF was involved in a study by W.C.L. Hemeon entitled Report of Preliminary Dust Investigation for Asbestos Textile Institute, June 1947. This study was done in connection with members of the Asbestos Textile Institute (ATI). This study found that workers exposed to less than the recommended threshold limit value for asbestos were nonetheless developing disease. The IHF never published this study and, in doing so, acted to conceal the study from the general public including asbestos-exposed workers.

135. Beginning in the mid-1950's, the IHF and The Mellon Institute were involved in the the publication of works by Dr. Braun and Mr. Truan entitled An epidemiological Study of Lung Cancer in Asbestos Miners. In its original form in September, 1957, this study had concluded that workers with asbestosis had an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis. The final published version of this study in June, 1958, deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian government had been under-reporting cases of asbestosis. The members and agents of the IHF and The Mellon Institute, individually and through these organizations, conspired with the members of the Quebec Asbestos Mining

Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, to delete the above-described information regarding asbestos and cancer.

136. The above-described actions of the members and agents of the IHF and The Mellon Institute constituted intentional deception and fraud in actively misleading the public about the extent of the hazards connected with breathing asbestos dust.

137. The above-described actions of the IHF and The Mellon Institute and their individual members substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by the Plaintiff's Decedent. The Plaintiff's Decedent reserves the right to supplement these allegations once the defendants have identified all their memberships in trade organizations and the memberships of their officers, agents, employees and directors.

## COUNT FIVE

### Product Liability, combined and concurring negligence, intentional tort and conspiracy

138. The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

139. The fourth cause of action for wrongful death is based on legal

theories of product liability, combined and concurring negligence, intentional tort, and conspiracy.

140. As a result of Defendants' actions, Plaintiffs Decedents were exposed to unreasonably dangerous, defective, negligently manufactured and marketed asbestos-containing products and/or materials, which caused grave and progressive bodily injury to Plaintiffs Decedents and which proximately caused the death of Plaintiffs Decedents.

141. Plaintiffs assert that they have filed suit either within the applicable State statute of limitations period, and/or within the appropriate limitations period as its commencement date is modified by 42 U.S.C. § 9658 (a)(1), (b)(4)(A) (CERCLA) and as held in *Kowalski v. The Goodyear Tire & Rubber Company, 841 F. Supp. 104, 107 (W.D.N.Y. 1994)*.

## **JURY DEMAND AND AD DAMNUM**

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs hereby demands a trial by struck jury on all of the issues which have been or may hereafter be raised in any of the pleadings, whether filed by or on behalf of the Plaintiffs or any of the Defendants, and further demands judgment jointly and severally against all of the Defendants in an amount to be assessed by the jury as proper and just, together with all special and general damages permitted under applicable law as the Court deems proper and just.

This 29th day of January, 2007.

Respectfully submitted,

G. Patterson Keahey, Jr. ASB-6357-A64G
Law Offices of G. Patterson Keahey, P.C.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209
Telephone:  (205) 871-0707
Facsimile:  (205) 871-0801
E-mail: info@mesohelp.com

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
01/15/2008
CT Log Number 512979524

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**     Complaint Processing
Maron & Marvel
1201 North Market Street, Suite 900
Wilmington, DE 19801

**RE:**     **Process Served in Delaware**

**FOR:**     BP America Inc. (Domestic State: DE)

RECEIVED

JAN 16 2008

MARON MARVEL BRADLEY
& ANDERSON, P.A.
COMPLAINT PROCESSING

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James R. Bain, et al., Pltfs. vs. A.O. Smith Corporation, et al. BP America, Inc., etc., Dfts. <br> *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Return of Service Form, Complaint and Demand |
| **COURT/AGENCY:** | United States District Court, AL <br> Case # 2:07-cv-84 |
| **NATURE OF ACTION:** | Asbestos Litigation - Fatal Injury/Wrongful Death - including personal injuries |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 01/15/2008 postmarked on 01/10/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | G. Patterson Keahey, Jr. <br> Law Offices of G. Patterson Keahey, P.C. <br> One Independence Plaza <br> Suite 612 <br> Birmingham, AL 35209 <br> 205-871-0707 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 791477061177 <br> Image SOP - Page(s): 83 <br> Email Notification, Complaint Processing lec@maronmarvel.com <br> CC Recipient(s) <br> William E Maseth, Jr., via Regular Mail |
| **SIGNED:** <br> **PER:** <br> **ADDRESS:** <br><br> **TELEPHONE:** | The Corporation Trust Company <br> Scott LaScala <br> 1209 Orange Street <br> Wilmington, DE 19801 <br> 302-658-7581 |

Page 1 of  1 / AS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT**
B

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

MIDDLE District of ALABAMA

JAMES R. BAIN, et al

*ALIAS*
## SUMMONS IN A CIVIL ACTION

V.

A. O. SMITH ELECTRICAL PRODUCTS, ET AL.

CASE NUMBER:    2:07-CV-84-MHT

TO: (Name and address of Defendant)

BP America Inc.
c/o Registered Agent for Service of Process:
The Corporation Trust Company,
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

G. Patterson Keahey PC
Attorney at Law
One Independence Drive
Suite 612
Birmingham, AL  35209

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

*Debra P. Hackett*                          1/11/08

CLERK                                             DATE

*William C. ___*

(By) DEPUTY CLERK

AO 440  (Rev.  8/01)  Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL   $0.00 |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                    Date                         *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

04 OCT -8 PM 2: 37

RICT COURT
OF ALABAMA

**ENTERED**
OCT - 8 2004

| | |
|---|---|
| SIDNEY S. CHANCELLOR, | ] |
| Plaintiff, | ] |
| and | ] |
| JOHN L. PARKER, | ] |
| Plaintiff, | ] Case No. CV-04-BE-2554-S |
| vs. | ] |
| AIR LIQUIDE AMERICA CORP., et al., | ] |
| Defendants. | ] |

## ORDER DISMISSING THE CASE

Based on the gross inadequacies of the plaintiffs' complaint, the court *sua sponte* dismisses this case without prejudice and with leave to refile a complaint that complies with all the requirements of the Federal Rules of Civil Procedure within **20 days of the date of this order**.

"Although the liberal federal rules require only notice pleading, they still require a 'short and plain statement of the claim showing that the pleader is entitled to relief'.... 'The pleadings still must state a 'cause of action' in the sense that it must show 'that the pleader is entitled to relief'; it is not enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see

1



EXHIBIT
C

that there is some legal basis for recovery.'" *Hoshman v. Esso Standard Oil Co.*, 263 F.2d 499, 501 (5th Cir. 1959) (quoting Fed. R. Civ. P. 8(a); James Wm. Moore et al., Moore's Federal Practice 1653 (2d ed.)). Neither the defendants nor the court can discern from the plaintiffs' complaint a fair idea of what the plaintiffs are complaining. At best, the complaint suggests only that plaintiffs have respiratory illnesses, that plaintiffs were exposed to silica "during all or part of [their] working lives...while working at various worksites in Alabama or other states," and that all seventy-five named defendants were in some way participants in the sand blasting industry.

Although the complaint alleges generally that different groups of defendants negligently manufactured equipment, failed to warn, etc., the complaint forces the defendants to guess what they each may have done to injure the plaintiffs, and when, where, and how. All seventy-five defendants must therefore answer with abandon, pleading every conceivable affirmative defense, while simultaneously risking the possibility that they may inadvertently fail to plead the one good defense relevant to whatever as-yet-unknown specific claims against them discovery may reveal.

Not only does the complaint fail to place the defendants on notice of the nature of the claims against them, it also contains numerous other inadequacies–among them, failure to state with particularity the circumstances constituting fraud, and failure to name spouses as plaintiffs while asserting loss of consortium, or to show whether, if the spouses were named as plaintiffs, this court would have jurisdiction over this diversity action. Furthermore, the court finds that it will be impossible to set the boundaries of discovery on the basis of this complaint. *See Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001).

The court is acutely aware of its duty to dispose of shotgun complaints at the earliest

2

opportunity. *Byrne*, 261 F.3d at 1130.[1] Many defendants have already moved the court to dismiss the plaintiffs' claims against them for failure to state a claim for which relief can be granted, or in the alternative, for a more definite statement. Many are even now heroically struggling to answer the complaint. Rather than wait until justice has been obstructed by the inadequacies of this complaint and "scarce judicial and parajudicial resources" are further wasted, the court *sua sponte* dismisses this case as to all defendants without prejudice and with leave to refile a complaint that complies with all the requirements of the Federal Rules of Civil Procedure within 20 days of the date of this order.

In filing their amended complaint, plaintiffs should be mindful of the Eleventh Circuit's suggestion to district courts regarding those who file shotgun pleadings: "[i]f use of an abusive tactic is deliberate and actually impedes the orderly litigation of the case, to-wit: obstructs justice, the perpetrator could be cited for criminal contempt." *Byrne*, 261 F.3d at 1131-32. The court is aware that the plaintiffs' nearly identical case has already been dismissed from the Circuit Court of Jefferson County, Alabama.

---

[1] In *Byrne,* the Eleventh Circuit detailed the many evils a court would countenance by allowing a case to proceed on the basis of a shotgun complaint such as the one presently before the court–among them, "obstruction of justice," the potential for extortion, "watering down the rights of parties...to litigate efficiently," and "consuming an inordinate amount of the court's time" while "justice is delayed, if not denied, to other litigants who are standing in the queue waiting to be heard." *Byrne*, 261 F.3d at 1130, 1131. The Eleventh Circuit observed in *Byrne*: "Why. . .would a lawyer engage in shotgun pleading? Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims." *Id*. at 1130.

The pending motions to dismiss (docs. 28, 34, 35, 43, 44, 49, 59, 60, 62, 69, 70, and 74) are

MOOT.

Done and ordered this _8th_ day of October, 2004.

Karon O. Bowdre
United States District Judge

**FILED**
2005 Sep-30  AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE MAE FIKES, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.  2:05-cv-1864-RDP |
| | } | |
| AEROFIN CORPORATION, et al., | } | |
| | } | |
| Defendants. | } | |
| | } | |

### ORDER

In accordance with the court's rulings during the September 30, 2005 telephone conference

and the memorandum opinion issued contemporaneously herewith, the following motions are

**GRANTED**:

    (1)    Aqua-Chem, Inc.'s Motion for More Definite Statement (Doc. # 15);[1]

    (2)    Cleaver Brooks Company, Inc.'s Motion for More Definite Statement (Doc. # 16); and

    (3)    The Austin Company's Motion for More Definite Statement (Doc. # 40).

Plaintiff is **ORDERED** to replead her complaint **on or before October 28, 2005**, in

accordance with the Federal Rules of Civil Procedure and the following specific mandates:

    (1)    include a separate count for each cause of action that specifically delineates which claims are asserted against which Defendant;

    (2)    assert a proper factual basis for each claim with sufficient detail to put Defendants on notice of the claims against them (*e.g.*, identity of product(s),

---

[1] The motions for more definite statement filed by Aqua-Chem and Cleaver Brooks Company, Inc. request that Plaintiff provide a more definite statement in accordance with Alabama Rule of Civil Procedure 12(e). (Docs. # 15, 16, at 3). The court assumes that Defendants intended to move on the authority of **Federal** Rule of Civil Procedure 12(e), and the motions are granted on that basis.



**EXHIBIT**

D

manufacturer(s), purchaser(s) or other user(s) of product(s), time frame of alleged exposure(s), location(s)/employer(s) where exposure(s) occurred, identification of how other Defendant(s) contributed to the alleged exposure(s));

(3)    plead with particularity any fraud claims in accordance with Rule 9(b) (*e.g.*, identity of manufacturer(s), purchaser(s) and any other party who allegedly concealed information, time frame of alleged concealment, and identity of person(s) who allegedly concealed information); and

(4)    ensure that each claim pled has a proper legal basis.

Given that the court has ordered repleading of the complaint, the following motions are

**DENIED WITHOUT PREJUDICE:**

(1)    Aqua-Chem, Inc.'s Motion to Dismiss (Doc. # 15);

(2)    Cleaver Brooks Company, Inc.'s Motion to Dismiss (Doc. # 16);

(3)    Georgia Pacific Corporation's Motion to Dismiss (Doc. # 22);

(4)    John Crane, Inc.'s Motion to Dismiss (Doc. # 27);

(5)    Honeywell International, Inc.'s Motion to Dismiss (Doc. # 28);

(6)    The Austin Company's Motion to Dismiss (Doc. # 40); and

(7)    Saint-Gobain Abrasives, Inc.'s Motion to Dismiss (Doc. # 44).

Moreover, having found that a stay of this litigation would promote judicial efficiency and would prevent the possibility of inconsistent pretrial rulings, the court hereby **STAYS** all proceedings in this case (with the exception of the filing of Plaintiff's amended complaint, as outlined above) pending the potential transfer of this action to the MDL proceeding established in the Eastern District of Pennsylvania.[2]

_____

[2] With the exception of the requirement that Plaintiff replead her complaint, the court intends for the stay of this case to apply to **all filings**, including required responses under Fed. R. Civ. P. 12 and Fed. R. Civ. P. 15. Accordingly, Defendants are not required to respond to Plaintiff's amended complaint until after transfer to the MDL proceeding. Moreover, the stay of this case is also

**DONE** and **ORDERED** this ___30th___ day of September, 2005.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

applicable to responses due from Defendants who have been served with Plaintiff's original complaint, but for whom the response time has not yet expired, and Defendants served after the entry of this order. Counsel for Defendants who have not yet responded to Plaintiff's original complaint should file a notice of appearance in this court.

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**IN RE: ASBESTOS PRODUCTS**
**LIABILITY LITIGATION (NO. VI)**                    **MDL DOCKET NO. 875**

**This Document Relates To:**
**JAMES R. BAIN, et al. vs.**
**A. O. SMITH ELECTRICAL**
**PRODUCTS, ET AL.**

## IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **JAMES R. BAIN, ET AL.** | ) | |
| | ) | |
| **PLAINTIFFS** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **VS.** | ) | **2:07CV84-MHT** |
| | ) | |
| **A. O. SMITH ELECTRICAL** | ) | |
| **PRODUCTS, ET AL.** | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

---

## BP AMERICA'S MOTION TO DISMISS FOR FAILURE TO COMPLY WITH RULE 4(m) OF THE FEDERAL RULES OF CIVIL PROCEDURE, OR IN THE ALTERNATIVE MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), OR IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(e); AND MOTION TO REQUIRE PARTICULARITY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 9(b)

---

Defendant BP America, Inc. [hereinafter BP], by and through its attorneys of record, Forman

Perry Watkins Krutz & Tardy LLP, would move this Honorable Court as follows:

1.    Federal Rule of Civil Procedure 4(m) provides that if a party cannot show good cause why

service was not had upon a defendant within one hundred twenty (120) days after the filing of the complaint that the action shall be dismissed.

2.      The complaint in this cause was filed on January 29, 2007. A copy of the complaint is attached hereto as Exhibit "A."

3.      The summons was issued by the court on January 11, 2008, some three hundred forty-seven (347) days after the filing of the complaint. A copy of the summons and complaint was served on BP by certified mail from the attorney for the plaintiffs on January 15, 2008, three hundred fifty-one (351) days after the filing of the complaint. A copy of the summons and acknowledgment is attached hereto as Exhibit "B."

4.      Pursuant to Fed. R. Civ. P. Rule 4(m), this action should be dismissed as to BP for Plaintiffs' failure to serve this Defendant with the summons and complaint within one hundred twenty (120) days after filing of the complaint. Dismissal without prejudice is proper if service of summons and complaint is not effectuated within one hundred twenty (120) days after filing of the complaint and no good cause for lack of service is shown.

5.      Good cause has not and cannot be shown as to why service was not had upon BP within one hundred twenty (120) days after filing of the Complaint.

6.      BP reserves all defenses it may have in this cause, and the filing of this Motion to Dismiss shall not be considered a waiver thereof.

WHEREFORE, PREMISES CONSIDERED, BP America, Inc. moves this Honorable Court to dismiss this claim with all costs assessed to plaintiffs.

2

In the alternative:

7.      BP submits that the allegations of the Complaint filed in this matter, a copy of which is attached as Exhibit "A," fails to state a claim upon which relief can be granted.

8.      Specifically, the Complaint fails to allege which specific products manufactured, distributed or "contracted" by which particular Defendant to which the Plaintiffs and/or Plaintiffs' decedents were allegedly exposed, at which particular worksite(s) during which time period(s) of their approximately seventy-three (73) year work histories.

9.      Moreover, no specific allegations are made against any particular Defendant, rather the Complaint broadly alleges that the Defendants were negligent, grossly negligent or otherwise manufactured defective products. Plaintiffs' Complaint in this matter consists of nothing more than a series of conclusory allegations of law. *See* Complaint at paragraphs 74 - 124. It is well-established that such allegations should be dismissed for failure to state a claim. See *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 124 (Ala. 2003) ("Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.") (citing *Next Century Communications Corp. v. Ellis*, 318 F. 3d 1023, 1025 (11th Cir, 2003)); *Marsh v. Butler County, Ala.*, 268 F 3d 1014, 1036, n. 16 (11th Cir. 2001) ("in light of the usual pleading requirements of Federal Rules of Civil Procedure 8(a), unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.")

As Judge Bowdre explained in *Sidney S. Chancelor, et al. v. Air Liquide America Corp., et al.*,

3

in the United States District Court for the Northern District of Alabama, Southern Division, Civil Action

No.: CV-04-BE-2554-S, where:

> . . . the Complaint alleges generally that different groups of Defendants
> negligently manufactured equipment, failed to inform of possible danger,
> etc., the Complaint forces the defendants to guess what they each may
> have done to injure the plaintiffs, and when, where or how. All seventy-
> five defendants must therefore answer with abandon, pleading every
> conceivable affirmative defense simultaneously risking the possibility that
> they may inadvertently fail to plead the one good defense relevant to
> whatever as-yet-unknown specific claims against them discovery may
> reveal.

Exhibit "C" [October 8 Order], p. 2.

10.     Generally speaking, the Complaint fails to put BP, or any other Defendant, on notice as to

the claims that they are to defend against. Accordingly, Plaintiffs' Complaint should be dismissed unless

and until they replead with specific facts as to which of the Defendants' products injured the Plaintiffs and/or

Plaintiffs' decedents, as well as specific facts regarding work sites, locations, and how Defendants'

products allegedly injured Plaintiffs and/or Plaintiffs' decedents.

WHEREFORE, PREMISES CONSIDERED, BP America, Inc., prays that this Honorable Court

will dismiss the Complaint filed against them, for failing to state a claim upon which relief can be granted,

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In the alternative:

11.     Rule 12(e) of the Federal Rules of Civil Procedure requires that a party, who has filed a

pleading that is so vague or ambiguous that the opposing party cannot reasonably be required to frame a

responsive pleading, correct the details complained of and provide the details desired.

4

12.    BP would most respectfully show unto this Honorable Court that for all of the reasons set forth and asserted above, it is impossible for BP to adequately prepare a defense of the Plaintiffs' claims without knowing, inter alia: (1) the products of BP, if any, which are claimed to be defective; (2) when, where, and under what conditions the Plaintiffs and/or Plaintiffs' decedents were allegedly exposed to such products; (3) the name of the Plaintiffs and/or Plaintiffs' decedents employers at the time of alleged exposure; (4) the addresses of the work sites in issue; (5) the type of work being performed by the Plaintiffs and/or Plaintiffs' decedents at the time of their alleged exposure to BP's products; and, (6) when, how, and under what circumstances the Plaintiffs and/or Plaintiffs' decedents were diagnosed with an asbestos-related condition.

13.    BP is entitled to be fairly apprized as to the nature of the claims against it, the nature of the disease which the Plaintiffs and/or Plaintiffs' decedents contend they have incurred, as well as the precise nature of the defects in the product(s) associated with BP or the specific acts of negligence charged against it.

14.    In a similar case, *Charlotte Mae Fikes v. Aerofin Corporation, et al.*, in the United States District Court for the Northern District of Alabama, Southern Division, Civil Action No.: 2:05-CV-1864-RDP, Judge R. David Proctor issued an order on September 30, 2005, regarding this same issue in which he ordered that the plaintiff:

> (1)    include a separate count for each cause of action that specifically delineates which claims are asserted against which Defendant;

5

      (2)      assert a proper factual basis for each claim with sufficient detail to put Defendants on notice of the claims against them (e.g., identity of product(s), manufacturer(s), purchaser(s) or other user(s) of product(s), time frame of alleged exposure(s), location(s)/employer(s) where exposure(s) occurred, identification of how other Defendant(s) contributed to the alleged exposure(s));

      (3)      plead with particularity any fraud claims in accordance with Rule 9(b) (e.g., identity of manufacture(s), purchaser(s) and any other party who allegedly concealed information, time frame of alleged concealment, and identity of person(s) who allegedly concealed information); and

      (4)      ensure that each claim pled has a proper legal basis.

*See* Order attached as Exhibit "D."

WHEREFORE, PREMISES CONSIDERED, BP America, Inc., prays that this Honorable Court will order Plaintiffs to file a new Amended Complaint, setting forth a more definite statement of their claims such that BP is placed on notice as to the charges being made against it so that it might adequately prepare a defense and responses to same, and to conduct meaningful discovery in order to appropriately frame the issues before this Honorable Court.

15.     Additionally, BP would respectfully show unto this Honorable Court that the Plaintiffs make vague and uncertain allegations as to BP and/or other Defendants concerning fraud, without stating the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, BP America, Inc., respectfully requests that this Honorable Court require the Plaintiffs to amend their pleadings, in order to set forth specifically and in

6

detail, with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, sufficient

averments.

16.     BP specifically reserves and does not waive all other available defenses it may have in this

cause, and pray for such other relief as this court may deem appropriate in the premises.

RESPECTFULLY SUBMITTED, this the __22__ day of January, 2008.

RICHARD M. CRUMP (CRUMR6839)
DONALD C. PARTRIDGE (PARTD6713)
LAURA D. GOODSON (GOODL0579)

ATTORNEYS FOR BP AMERICA, INC.

OF COUNSEL:

**FORMAN, PERRY, WATKINS, KRUTZ & TARDY LLP**
200 South Lamar Street
City Centre, Suite 100
Post Office Box 22608
Jackson, MS 39225-2608
(601) 960-8600;  (601) 960-8613 [facsimile]

7

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**IN RE: ASBESTOS PRODUCTS**
**LIABILITY LITIGATION (NO. VI)**                    **MDL DOCKET NO. 875**

**This Document Relates To:**
**JAMES R. BAIN, et al. vs.**
**A. O. SMITH ELECTRICAL**
**PRODUCTS, ET AL.**

### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **JAMES R. BAIN, ET AL.** ) | |
| ) | |
| **PLAINTIFFS** ) | |
| ) | **CIVIL ACTION NUMBER:** |
| **VS.** ) | **2:07CV84MHT** |
| ) | |
| **A. O. SMITH ELECTRICAL** ) | |
| **PRODUCTS, ET AL.,** ) | |
| ) | |
| **DEFENDANTS** ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: G. Patterson Keahey, Jr., Esq., counsel for the plaintiffs, and all defense counsel of record, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none at this time.

Respectfully submitted,

RICHARD M. CRUMP (CRUMR6839)
DONALD C. PARTRIDGE (PARTD6713)
LAURA D. GOODSON (GOODL0579)